THE EAGLE WHITE LEAD COMPANY, Plaintiff, *v.* THE CITY OF
CINCINNATI ET AL., Defendants.

Spring street was originally laid out and opened twelve feet in width from
Court to Hunt street, and in 1844, James Hunt, the proprietor of the prop-
erty on the east side of said street, in making a lease for ten years to
Heming of the ground now owned by the plaintiff, reserved for an ad-
dition in width to said street a strip of ground twenty-eight feet wide,
which he threw open, increasing the width of Spring street to forty feet.
In 1848, the said Hunt agreed with the holders of said leasehold that the
strip of twenty-eight feet of ground might be reduced to eighteen feet,
leaving the street thirty feet in width, agreeing that they should have a
private right of way over said strip of ground; and Spring street, of the
full width of thirty feet, has been open and used by the public as a public
street since 1844, and is now so used.

*Held,* that said strip of ground, eighteen feet in width, is to be regarded as
part of Spring street and public property.

The plaintiff owned the Eagle White Lead Works, erected upon its lot fronting on Spring street, one hundred and thirty feet north of Court street, Cincinnati. The improvements upon the plaintiff's lot were valuable, and were erected in 1852. In 1868, the city council, by ordinance, changed the grade of Court street from the grade established in 1833, so that, at its intersection with Spring street, it was nineteen feet above the old grade, making the grade of Spring street, from the plaintiff's premises to Court street, an ascending one, and, though practicable less convenient as an access to plaintiff's property than it was before.

*Held,* that the right of the plaintiff in Court street and in Spring street, from plaintiff's property to Court, was merged in that of the public, and that the injury resulting to the plaintiff from such lawful improvement in Court street is speculative, and too remote to be made the foundation of a recovery against the city.

This suit was brought to recover damages from the city caused to the improvements of the plaintiff, upon a lot fronting on Spring street, between Hunt and Court streets, by raising the grade of Court street at its intersection with Spring street. The grade of Court street was raised in connection with Gilbert avenue, and other street improvements in Deercreek valley, some nineteen feet at the point where it passes the street on which the plaintiff's lot is situated. The plaintiff's lot is one hundred and thirty-eight feet north from Court street. It is claimed, by the plaintiff, that the raising of Court street rendered it necessary to raise the street in front of its premises; and that in consequence of raising the street in front of the lot of the plaintiff, its improvements, which were valuable and permanent, would have to be taken down and raised to a corresponding level.

The question of damages, on the hypothesis that the plaintiff was entitled to be indemnified for the loss sustained by such change of grade of Court street, was submitted to a jury, who found a verdict for $1,700. The plaintiff also claims a private right of way, in the east, eighteen feet of the ground opened and used as part of Spring street, and that he is therefore entitled to be regarded as an owner whose property fronts upon Court street. The

question whether the city is liable to the plaintiff for such damages has been reserved to this General Term, on a motion to enter judgment against the city for the amount assessed by the jury.

*Tilden & Goodman*, for plaintiff.

*Walker & Conner*, for defendant.

TAFT, J.   By the agreed statement of facts accompanying the reservation, it appears:

"That the title of the property of the plaintiff is derived from the following leases and deeds, which are annexed to the statement, viz: lease from John Frazer, trustee, to Heming; lease from Heming to Conklin; lease from Hunt and Pendleton to Conklin; lease from Hunt to Conklin; deed from Hunt to Conklin, Wood & Elstner; deed from Wood & Elstner to Eagle White Lead Company.   The agreement between Conklin, Wood & Co. to Hunt is offered in evidence, subject to the decision of the court as to its relevancy, admissibility, and effect.

"It is agreed that the space of thirty feet or more, now open, has been open and unobstructed to the same extent that it now is ever since the date of the lease to Heming, in the locality of the street called for in that lease, and has during all that time been used by those of the public desiring to pass that way as a public street.

"It is also admitted that the plat annexed to said statement is a correct exhibit of the location of the streets and property in that vicinity."

To understand the claims of the plaintiff as an owner of a private right in the eighteen feet of Spring street, it is necessary to give an outline of the history of Spring street and of the plaintiff's title.

In 1844, Spring street, extending south from Hunt to Court street, was only twelve feet wide, and it ran parallel to Broadway, and distant about one hundred and seventy

feet eastwardly from it. On the east side of this Spring street, there was a lot of land belonging to James G. Hunt, then in the hands of a trustee for him, extending along Court street some three hundred and twenty feet, and along the east side of Spring street three hundred feet. In January, 1844, John Frazer, the trustee of James G. Hunt, made a lease to one Wellman for ten years of a lot distant one hundred and thirty-two feet north from Court street, and fronting on Spring street thirty feet. In August of 1844, Frazer, as trustee, granted a further lease to Heming of a portion of the residue of the lot, and the entire residue of what was called the "tanyard lot," and extending northwardly from the Wellman lot, on the east side of Spring street about one hundred and twenty-four feet, for fifteen years. At this time there was granted, by the trustee of Hunt, a strip of ground twenty-eight feet wide from the west side of the Hunt tract, lying next east of Spring street, and extending northwardly from Court street to the north line of the Hunt tract; so that, in front of the premises granted to Wellman and Heming, there would be a street forty feet wide, extending to Court street, and north from said premises to Hunt street, Spring street would be but twelve feet in width.

In August, 1848, Conklin, Wood & Wood purchased from Hunt the interest of both the lessor and lessees under said leases. Hunt, who had succeeded his trustee, made a lease of the premises for a term after the expiration of the former leases. At this time it was agreed that the twenty-eight foot strip of ground should be cut down to eighteen feet, so as to make a road or street thirty, instead of forty feet wide. This lease granted the premises by a description bounding them on the west by Spring street, but excepted from it a strip of ground eighteen feet wide, running from north to south along the west side, which strip of ground was declared in the lease reserved to be used as a private street between said Hunt and said Conklin, Wood & Wood.

Conklin, Wood & Wood occupied the premises till 1853; they then, with John Elstner, purchased the reversion from Hunt, and received a deed from him. No provision was inserted in that deed for the eighteen feet, but the premises were bounded on the original twelve feet, or Spring street, although the forty foot street was referred to as described in the lease to Heming. It was, however, stipulated, in a paper executed at the same time, "that they would keep open for their mutual benefit a strip of land eighteen feet wide off the east side of Hunt's tanyard lot, and that they would mutually bear the expense of paving or grading Court street in front of said eighteen foot strip."

But it appears that from 1844 this street has been open at least thirty feet wide, and all the while used by the public as a street, and that it is now so used. Without going further into the history of Spring street, and the variety of arrangements as to its width, but taking into consideration the fact that this Spring street has been open and traveled as a public street, for at least the width of thirty feet, for twenty years and more, we think that, under all the circumstances, the intention that it should be a street was long since established, and that it could not be lawfully closed up. This dedication was, in the view we take of it, complete and accepted prior to the act of 1865, requiring the acceptance of dedications by ordinance.

We conclude, therefore, that the plaintiff has no such private ownership in the eighteen feet as to claim the rights of an owner of a lot fronting on Court street.

As to the question whether a plaintiff can recover for damages consequent upon an improvement of a street on which his property does not front, it is proper to consider what has been decided in our courts on the subject of damages caused by changing grades of streets, and on what grounds the decisions have been placed. In England, and in other States than Ohio, it has been held that a municipal corporation has full power over the improvement of streets, and may raise or depress the grades with-

out liability to the owners of property fronting on the streets. In Ohio, our courts have not doubted that the municipal corporations had full power over the grades of the streets, and could raise or depress them at pleasure; but they have determined that if a grade has been once established, and the owner of property fronting upon the street has erected improvements suited to the established grade, and the city changes such established grade so as to cut off or injure the access to the improvements from the street, the owner may recover damages. This is an exception to the common law, as held in England, and other States of this country, but it is well established in Ohio. The principle does not apply to improvements made by an owner before a grade has been established. He is bound in such a case to anticipate, at least, any reasonable change of grade from the natural surface, and if he erects his improvements so low or so high as not to suit such reasonable grade when established, he can recover no damages.

No decision of our courts has gone so far, hitherto, as to give damages to owners of property not fronting on the street whose grade has been changed; and we do not feel justified in enlarging the exception which our courts have introduced into the common law. If we should enlarge it so as to give damages on other streets than those on which the property fronts, it would be difficult to fix any practical limit, or to tell how many suits would be brought against a city whenever it should venture to improve a street. The cost of litigation and damages would be greater than the cost of the improvements.

The ground on which our Ohio courts have given damages is, that a man whose property bounds upon the street has a peculiar interest in the street, to which he has adjusted his improvements. That this doctrine does not extend to the making of the access to an owner's property less convenient by a change in the location of a road near, but not upon, the land of the owner, was decided in the late case of *Jackson* v. *Jackson,* 16 Ohio St. 163. In that

case it was shown that the road which passed through the plaintiff's premises was changed, not on his premises, but immediately on leaving his premises, so as to make his egress or ingress from and to his home much less convenient than by the old-established road.

The court say, page 168: "The private rights of the owner of lands in the adjacent highways, upon principle, are the same as those of the owner of lots in towns to the adjacent streets. In either case they are, to a great extent, modified by attending circumstances. Such owner has a private right of access to and from the street or highway; and when he has made improvements on his land with direct reference to the *adjoining* highway as then established, and with reasonable reference to its prospective improvement and enjoyment by the public, he has a private right of way, or passage, to and from the highway as it then exists; and any substantial change in the highway, to the injury of such passage or way, is an invasion of his private property; and this private right extends so far as the reasonable and convenient use of the *adjacent* highway; but beyond such necessary use thereof, the private right is merged in that of the public. Especially must this be so, when, as in this case, the alteration of the road complained of is not adjoining the lands of the plaintiff, and the injury thereto is, at most, remote and consequential."

The same principle, we think, applies to the present case. If the plaintiff's property is rendered less eligible by a necessary improvement of Court street, on which its property does not bound, by reason of the consequent increase of the grade of Spring street from the property of plaintiff to Court street, the injury is too remote to be compensated, and the private right of the plaintiff must, to that extent, be regarded as merged in that of the public. If Spring street should be graded up in front of the plaintiff's property without his consent, and the access to its improvements should be thereby cut off or injured, a case would be made within the principle of the Ohio decis-

ions.  But the simple fact, that the plaintiff, in passing along Spring street to Court street, now encounters an ascent instead of a descent as before, is not a ground of recovery, although it should appear that plaintiff's property was made less valuable by the change.

A finding of damages in such a case must, at least, be regarded as speculative and very uncertain.  It is not claimed that the access to plaintiff's property by Spring street is cut off.  The grade is not very steep at present; and the worst that can be claimed is, that for hauling heavy loads, the draft is more severe than it was before.

From the statement of facts, we are satisfied that no damages have been shown which entitle the plaintiff to a recovery.